IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-06-638 |
| | § | C.A. No. C-07-364 |
| MANUEL ANGEL CUELLAR, | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO VACATE, SET ASIDE
OR CORRECT SENTENCE, AND ORDER
<u>DENYING CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Manuel Angel Cuellar's ("Cuellar") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, which was received by the Clerk on September 10, 2007. (D.E. 30.)[1] He also filed a supporting memorandum (D.E. 31) and affidavit in support of his motion. (D.E. 32.) The Court ordered the government to respond, and the government filed a combined response and motion to dismiss, or, in the alternative, for summary judgment on November 1, 2007. (D.E. 34, 38-39.) The government has also moved to expand the record to include the affidavit of defense counsel, which the Court GRANTS. Cuellar filed a reply on November 30, 2007. (D.E. 40.)

The Court has considered all of the submissions of the parties and the record in this case. As discussed in detail herein, two of Cuellar's four claims are subject to dismissal

---

[1] Docket entries refer to the criminal case, C-06-cr-638.

1

because he waived his right to file those claims. His other two claims, which arguably fall outside the scope of his waiver, fail on their merits. For these reasons, the Court DENIES his § 2255 motion. Additionally, the Court DENIES Cuellar a Certificate of Appealability ("COA"). Finally, Cuellar's motion to proceed *in forma pauperis* is DENIED AS MOOT.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II. FACTS AND PROCEEDINGS

**A.     Summary of Offense**[2]

On September 1, 2006, a Texas Department of Public Safety trooper observed a tractor-trailer rig with a defective cab marker light traveling northbound on U.S. Highway 77 in Nueces County near Driscoll, Texas. A traffic stop was performed. Cuellar was the driver. He told the trooper that his tractor-trailer had been loaded in Edinburg, Texas earlier that day and that he had been in the sleeper portion of the cab while the loading was taking place. A review of his driver's logbook, however, contradicted that statement. Cuellar stated he was transporting Maseca, or corn meal, to Atlanta, Georgia.

Based on the inconsistency and Cuellar's nervousness, the trooper asked for and received consent to search the trailer.[3] The trooper noticed that the metal seal on the trailer door was not secured. Upon entering the tractor-trailer, the trooper located 61 bundles of marijuana concealed among several pallets of corn meal, with a gross weight of 840

---

[2] The facts of the offense as set forth herein are derived from Paragraphs 4 and 5 of the Presentence Investigation Report ("PSR").

[3] See D.E. 36, Rearraignment Transcript at 15-16.

kilograms and a net weight of 764.20 kilograms. Cuellar admitted that he knew the marijuana was in his tractor-trailer.

The following day, September 2, 2006, DEA agents arrived and took custody of the case. Cuellar admitted to the DEA agents that he was present when his tractor-trailer was loaded, and that he knew he was transporting marijuana. Cuellar stated that he was approached by a man named "Gordo" who offered to pay him $5,000 to transport marijuana from Edinburg, Texas to Atlanta, Georgia. Cuellar stated that Gordo instructed him to find a legitimate load destined for Atlanta, Georgia. Cuellar told the agents that he was under the impression he would only be transporting three to five hundred pounds of marijuana.

## B.     Criminal Proceedings

On September 27, 2006, Cuellar was charged in a single-count indictment with possession with intent to distribute approximately 840 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (D.E. 9.) On November 1, 2006, Cuellar pleaded guilty pursuant to a written plea agreement with the government. (D.E. 17, 18.) In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend a sentence at the lowest end of the applicable guideline range and to recommend that Cuellar receive maximum credit for acceptance of responsibility. (D.E. 18 at ¶¶ 1-2.)

Additionally, the plea agreement included a waiver of Cuellar's right to appeal and

to file a § 2255 motion:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal <u>only</u> (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that Title 28, U.S.C. §2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 18 at ¶ 7) (emphasis in original). The agreement was signed by both Cuellar and his counsel. (D.E. 18 at 5.)

During the rearraignment, the prosecutor outlined Cuellar's plea agreement, including a statement that he "has waived his right to collaterally attack his sentence in this case pursuant to Title 28 United States Code, Section 2255." (D.E. 36, Rearraignment Transcript ("R. Tr.") at 11-12.) After that summary was given, Cuellar testified that the plea agreement was his, that he had read it with his attorney, that his attorney had explained it to him, that he understood it, and that he signed it. (R. Tr. at 12.)

The Court specifically questioned Cuellar under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion:

> **THE COURT**: In other words, my decision on your sentence

will be final. That is because of this agreement in which you are giving up an important right, the right to appeal your sentence, as well as, and conviction, as well as the right to file any petition under Title 28 of the United States Code, Section 2255, which can be used by defendants to modify or vacate their conviction and sentence after they become final. Do you understand that?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: And have you talked to Mr. Fugate about whether or not you should give up these rights that I have just described to you?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Do you want to give [up] your right to appeal your conviction and sentence?

**THE DEFENDANT**: Yes.

**THE COURT:** And do you want to give up your right to appeal, excuse me, your right to file a petition under Title 28 of the United States Code, Section 2255?

**THE DEFENDANT**: Yes.

(R. Tr. at 13-14.)

Cuellar also testified that no one had threatened him or forced him to plead guilty, that no one had promised him leniency, that it was his decision to plead guilty and that he was pleading guilty because he was guilty. (R. Tr. at 10-11.) It is clear from the foregoing that Cuellar's waiver of § 2255 rights was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report. (D.E. 19.)  The PSR calculated Cuellar's base offense level for the offense at 30, holding him accountable for 764.20 kilograms of marijuana.  It made no other adjustments to the offense level, other than a three-level adjustment for acceptance of responsibility. The resulting total offense level was 27. (PSR at ¶¶ 10-19.)  Coupled with his criminal offense level of I, the resulting guideline range was 70 to 87 months.  (PSR at ¶ 36.)

The case was called for sentencing on January 11, 2007.  At sentencing, defense counsel argued that Cuellar was entitled to safety valve relief, and the government agreed. With the safety valve, Cuellar's offense level was 25, with a guideline range of 57 to 71 months.  (D.E. 37, Sentencing Transcript ("S. Tr.") at 2-3.)

The Court sentenced Cuellar to 57 months in the custody of the Bureau of Prisons, to be followed by a four-year term of supervised release.  The Court also imposed a $100 special assessment and a $200 fine.  (S. Tr. at 4-5.)

Judgment of conviction and sentence was entered on January 19, 2007.  (D.E. 24.) Consistent with his waiver of appellate rights, Cuellar did not appeal.  Cuellar's § 2255 motion with supporting memorandum and affidavit was received September 10, 2007. (D.E. 30-32.)  It is timely.

### III.  MOVANT'S ALLEGATIONS

In his § 2255 motion, Cuellar lists four grounds for relief.   In his first ground, he alleges that he received constitutionally ineffective assistance from his counsel during the criminal proceedings, Sam R. Fugate, because counsel did not request a reduction for

6

Cuellar being a minor or minimal participant in the offense. (D.E. 30 at 4.)

Second, he claims that his counsel misled him about what his sentence was. It is not clear from his motion whether Cuellar is claiming that counsel misinformed him about his sentence *after* it was imposed, or whether he is claiming that counsel gave incorrect advise about what his sentence would be prior to his plea. (See, e.g., D.E. 30 at 5; D.E. 31 at 10.) Regardless of the timing, he claims that Fugate told him either that he would or that he had received a 36-month term of imprisonment and further told him that he would receive a reduction in his sentence for participation in a drug treatment program as well as be released to a half-way house. Cuellar also claims that counsel failed to explain to him that he faced deportation.

Third, Cuellar contends that counsel was ineffective for failing to bring to the Court's attention at sentencing that Cuellar had provided substantial assistance to the government. He contends that he was "promised a substantial assistance departure," but that he never received one. He claims that his counsel should have requested the departure. (D.E. 30 at 6-7.)

Fourth and finally, in a claim echoing part of his second ground for relief, Cuellar argues that Fugate failed to advise him as to the deportation consequences of his guilty plea or to seek a judicial recommendation against deportation. He explains that he was previously kidnaped in 2002 in Monterrey, Mexico and was not released until his family paid a ransom. (D.E. 30 at 8.) He alleges that, if he is returned to his native Mexico that he will be "harmed or killed in retaliation." (D.E. 30 at 8.) He also believes that he may

7

be killed by the persons who hired him to transport drugs in the instant case. (D.E. 31 at 11.) He claims that counsel was constitutionally ineffective for failing to inform the Court of these facts and failing to seek the Court's recommendation against deportation.

The government acknowledges that Cuellar's claim that his counsel "misadvised" him as to his sentence would fall outside the scope of his § 2255 waiver. It contends, however, that this claim is without merit and that his remaining claims are barred by his waiver. (D.E. 38 at 3-4.) Accordingly, it moves for summary judgment on the basis of his § 2255 waiver. (Id.) In the alternative, the government contends that his motion is subject to dismissal because the record in the case conclusively shows that no relief is appropriate as to his underlying allegations. (D.E. 38 at 11.)

For the reasons set forth herein, Cuellar's claims fail.

## IV.  DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn,

955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Cuellar has procedurally defaulted his claims by failing to raise them on appeal. Rather, the Court concludes that he validly waived his first and third claims, i.e., his claims that counsel failed to obtain a minor role reduction and failed to obtain a reduction for substantial assistance, as well as the portion of his fourth claim that contends his counsel should have sought a judicial recommendation against deportation. All of these claims allege ineffective assistance of counsel at sentencing and fall squarely within the scope of his waiver. Thus, the Court does not reach the merits of those claims. See infra Section IV.C.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).

His second and fourth claims allege that he received ineffective assistance with regard to his decision to plead guilty.[4] Thus, they challenge the validity of his plea and his waiver and fall outside the scope of his § 2255 waiver. See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-

---

[4] As the Court previously noted, it is not clear whether Cuellar's second claim is that his counsel misinformed him about his sentence before the plea, or, instead, that he was misled after sentencing about what sentence he had received. To the extent that Cuellar is claiming his counsel incorrectly told him *after sentencing* that he had received a 36-month sentence, that claim is subject to his waiver. In any event, Cuellar was present when his 57-month sentence was pronounced, so the claim is without merit.

9

waiver provision in the plea agreement). Thus, the Court turns first to these claims.

**B.     Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Cuellar argues that his attorney was deficient during the plea process for: (1) failing to advise Cuellar of his true sentencing exposure, instead advising him that he would probably receive a 36-month sentence; and (2) failing to properly explain that his guilty plea and conviction would subject him to deportation.[5]

---

[5] Cuellar's counsel has denied these allegations. In his affidavit, Fugate avers that Cuellar was advised in Spanish about the federal sentencing guidelines and that Fugate is satisfied that Cuellar knew what range of punishment was possible. (D.E. 38, Fugate Affidavit at 1.) Fugate further avers that Cuellar was advised that he would be deported. (Id.) The Court need not resolve this conflict between Fugate and Cuellar because it

When viewing the record as a whole, it is clear that Cuellar cannot establish his burden on any of these claims, because his testimony at the rearraignment and the plain record of this case refute them.

### 1. Alleged Failure of Counsel to Advise of True Sentencing Exposure

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Cuellar must show that, absent his counsel's deficiencies, he would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  This is a showing that cannot be met here.  The rearraignment transcript clearly establishes that Cuellar's decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, Cuellar testified that his attorney had made himself available to him and that he was satisfied with his services.  (R. Tr. at 6.)  He told the Court that he had understood counsel's explanations of the charge, the consequences of being found guilty, and the rights that he had.  (R. Tr .at 6-7.)  He further testified that counsel was following his instructions.  (R. Tr. at 7.)  The Court informed Cuellar of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights.  (R. Tr. at 7-9.)

---

resolves Cuellar's motion on different grounds.

11

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Cuellar that he faced a minimum sentence of at least five years, a maximum punishment of forty years in prison, and a maximum fine of $ 2 million. (R. Tr. at 9-10.) The Court also informed him that there was a mandatory $100 special assessment, a minimum supervised release term of four years and that supervised release could last the rest of his life. (R. Tr. at 10.) Cuellar testified that he understood. (R. Tr. at 10.)

Cuellar further testified that no one had threatened him or forced him to plead guilty, no one had promised him leniency, and that his decision to plead guilty was entirely voluntary. (R. Tr. at 10-11.) He testified that he was pleading guilty because he was, in fact, guilty. (R. Tr. at 11.)

Cuellar's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Cuellar's sworn statements show that he understood the charges against him, he understood the possible maximum sentence he faced, and that his guilty plea was voluntary.

Moreover, it is worth noting that the evidence against Cuellar was overwhelming. He was the driver of a tractor-trailer containing 764 kilograms of marijuana. After being Mirandized, he freely admitted at the time of the stop, and later to DEA agents, that he was aware that the marijuana was in his trailer. If he had gone to trial and been found guilty, he

12

likely would have received an even higher sentence, because he would not have received a reduction for acceptance of responsibility. Given this, and the facts of the case, he made a logical decision to plead guilty.

In short, Cuellar cannot establish that he would have proceeded to trial absent the alleged deficiencies of counsel. Thus, this claim fails.

### 2. Alleged Failure to Properly Explain Consequences of Deportation

Cuellar's second challenge to the § 2255 waiver is that his lawyer was ineffective for failing to properly explain that, as a consequence of his guilty plea, he would face deportation. Significantly, however, even where an attorney has failed to properly explain something prior to the rearraignment, no valid ineffective assistance claim exists if the Court corrected any such failure. See Lott v. Hargett, 80 F.3d 161, 167-68 (5th Cir. 1996) (a defendant suffers no prejudice due to receiving misinformation from his attorney where the plea colloquy reflects that the district court corrected any such misinformation). In this case, then, even if counsel was deficient for failing to properly advise Cuellar concerning the consequence of deportation, the Court corrected any such error and thus Cuellar cannot show prejudice. At the beginning of his rearraignment, the Court inquired:

> THE COURT: Where were you born?
>
> THE DEFENDANT: Monterrey, Mexico.
>
> THE COURT: Have you ever become an American?
>
> THE DEFENDANT: No, just a resident.
>
> THE COURT: Do you understand that if you are convicted of

13

> this crime you will not be allowed to live in the United States anymore and you will be prohibited from reentering the United States?
>
> THE DEFENDANT: Yes, yes, sir.

(R. Tr. at 2.) Again, his statements under oath are entitled to a presumption of truthfulness, <u>Lampaziane</u>, 251 F.3d at 524, and they establish that Cuellar understood that, if he pleaded guilty or was convicted of the crime, he would be subject to deportation. Cuellar has presented nothing to rebut that presumption. This claim fails on its merits.

Because the Court concludes that Cuellar's challenges to the validity of his plea agreement fail, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

## C.    Waiver of § 2255 Rights

It is clear from the rearraignment that Cuellar understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 13-14.) <u>See</u> <u>Wilkes</u>, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Cuellar's statements under oath are entitled to a strong presumption of truthfulness. <u>Wilkes</u>, 20 F.3d at 653; <u>Cothran</u>, 302 F.3d at 283-84. Those statements support the Court's conclusion that his waiver was knowing and voluntary. Cuellar's remaining claims are that he received ineffective assistance of counsel at sentencing. These claims fall squarely within the scope of his waiver. Therefore, they are not properly before

the Court. For these reasons, Cuellar's § 2255 motion is DENIED in its entirety.

**D.      Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Cuellar has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287

F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Cuellar is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims challenging his plea and waiver. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of the remainder of his claims.

### E.     Motion to proceed *in forma pauperis*

At the time he filed his motion, Cuellar also requested leave to proceed *in forma pauperis*. (D.E. 33.) For purposes of filing fees, a motion filed under § 2255 is essentially a continuation of the defendant's criminal case. See United States v. Cole, 101 F.3d 1076 (5th Cir. 1996) (a § 2255 motion is not a civil action for purposes of the Prison Litigation Reform Act). In this district, no filing fee is required to file such a motion. Accordingly, there is no need for *in forma pauperis* status in this matter and Cuellar's motion (D.E. 33) is DENIED AS MOOT.

### V.  CONCLUSION

For the above-stated reasons, Cuellar's motion under 28 U.S.C. § 2255 (D.E. 30)

is DISMISSED WITH PREJUDICE. The Court also DENIES Cuellar a Certificate of Appealability. Additionally, the government's motion to expend the record is GRANTED and Cuellar's motion to proceed *in forma pauperis* (D.E. 33) is DENIED AS MOOT.

It is so ORDERED this 3rd day of March, 2008.

_____
HAYDEN HEAD
CHIEF JUDGE